**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| RACHEL MOSBY, | |
| Plaintiff, | Civil Action No.: |
| v. | 5:20-cv-00163 |
| CITY OF BYRON, GEORGIA, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

COMES NOW Plaintiff Rachel Mosby and brings this action against Defendant City of Byron, Georgia, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* (hereinafter, "Title VII"), Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101, *et seq.*, (hereinafter, "ADA"), the Constitution of the United States, and the Constitution and Code of State of Georgia, and respectfully shows the Court the following:

### JURISDICTION AND VENUE

#### 1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act.

#### 2.

Venue is proper in this judicial district because Plaintiff was employed and the events underlying this action occurred in Peach County, Georgia, which is located in this judicial district, pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3).

**PARTIES**

3.

Plaintiff Rachel Mosby (hereinafter, "Plaintiff" or "Chief Mosby") is a citizen of the United States and a resident of Georgia. Chief Mosby is a covered employee under all laws referenced herein.

4.

Defendant City of Byron, Georgia, (hereinafter, "Defendant") is a municipality that may be served by delivering a copy of the Summons and Complaint to Mayor Michael Chidester, pursuant to Section 2.21 of Defendant's Code of Ordinances, located at the Byron Municipal Complex, 401 Main Street, Byron, Peach County, Georgia 31008.

5.

Defendant employed far in excess of fifteen employees every week of the current and preceding years and is otherwise a covered entity and employer within the meaning of Title VII and the ADA.

**STATEMENT OF FACTS**

6.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 6, as if the same were set forth herein.

7.

Chief Mosby, who was assigned male at birth, identifies as a female.

8.

As described herein, Chief Mosby is affected by several conditions in her right ankle and lower back-lumbar.

9.

Said conditions substantially limit and impair several of Chief Mosby's major life activities such as her mobility as well as standing, sitting, sleeping, and working, among other activities.

10.

Moreover, Chief Mosby became further disabled in February 2019, when she sustained injuries to her left hip, left wrist, and mid-back thoracic in an on-the-job motor vehicle accident, for which Chief Mosby was not at fault.

11.

Similarly, said injuries to her hip, wrist, and mid-back thoracic have left her impaired for an indefinite duration, and these injuries further substantially limit Chief Mosby's major life activities such as her mobility as well as standing, sitting, sleeping, and working, among other activities.

12.

Chief Mosby began her employment with Defendant on September 4, 2007, as the City's Fire Marshal.

13.

At that time, Defendant was served by the Byron Volunteer Fire Department.

14.

In January 2008, the City established its first professional Fire Department, and, shortly thereafter, Defendant appointed Chief Mosby as its first Fire Chief.

15.

During her eleven years as Chief, Chief Mosby's performance was exemplary.

16.

Chief Mosby oversaw the growth of the number of professional employees in the Fire Department.

17.

Chief Mosby contributed to the drafting of proposed City Ordinances.

18.

Chief Mosby developed Strategic Plans.

19.

Chief Mosby improved the quality of the Department's equipment.

20.

Chief Mosby incorporated a number of successful cost-cutting measures for Defendant.

21.

Chief Mosby obtained far more than $500,000 in grants for her Department.

22.

Chief Mosby's tenure was marked by many other accomplishments, accolades, and awards.

23.

Prior to Chief Mosby's tenure, the City had been rated by the Insurance Service Office ("ISO") as Class 7.

24.

A fire district receives an ISO rating from 1-10, with Class 10 being the lowest, which indicates that the fire district failed to meet ISO minimum requirements.  These ratings directly impact property owners' and municipalities' insurance rates and premiums, and can, thereby impact economic growth or lack thereof.

25.

Chief Mosby successfully led Defendant through two ISO surveys and lowered Defendant's ISO rating from Class 7 to Class 4 within only four years.

26.

At the time of her separation, Defendant was on-track to be rated as Class 3 due to Chief Mosby's leadership.

27.

City officials have acknowledged this critical success.

28.

For example, Mayor Pro Tem Michael Chidester made the following endorsement to a local media outlet after Chief Mosby's termination: "Chief Mosby was charged with working to improve the ISO rating for the city of Byron and I will say that he, and subsequently she, did a great job."

29.

Prior to the events described herein, Chief Mosby had only received one written reprimand during her tenure, although she was not otherwise disciplined, for uttering a profane word while she was on the scene of a fire emergency.

30.

In the last performance evaluation that she received, Chief Mosby's performance was described as "EXCEEDS STANDARDS," with only a few areas identified for improvement.

31.

Chief Mosby had been struggling with gender dysphoria for most of her life.

32.

In or around Fall 2016, she began her medical transition in order to allow herself to properly present as female.

33.

Initially, Chief Mosby attempted to transition inconspicuously; however, by Summer 2017, Chief Mosby realized that other employees of Defendant were circulating rumors about Chief Mosby and her appearance.

34.

In September 2017, Chief Mosby felt that it was necessary to inform the employees that she supervised of her transition.

35.

Soon thereafter, Chief Mosby came out to the City Administrator, the Mayor, and her fellow department heads.

36.

Thereafter, Chief Mosby presented entirely as female beginning in or around January 2018.

37.

While she initially thought that this news had been well-received, Chief Mosby often experienced microaggressions and other intentional harassment from her employees, fellow department heads, and members of the City Council.

38.

As an example of one such comment subtly expressing prejudice of which she was subjected was shortly after she came out when Councilman Michael Chumbley told Chief Mosby

that he did not have a problem with her transition but that he would if she showed up to work in a dress.

39.

Around the same time, the then-Mayor Pro Tem Michael Chidester also told Chief Mosby that the City could still use a performance review to get rid of her.

40.

Shortly after coming out, Chief Mosby was conducting interviews for an open position when she happened to interview a qualified candidate who was transgender.

41.

The City Council learned of this interview and enacted a hiring freeze *the day after* this candidate was interviewed.

42.

Despite the hiring freeze, Defendant still allowed other departments to continue hiring, such as the Public Works and Police Departments.

43.

Coincidentally, the hiring freeze was lifted shortly after Defendant fired Chief Mosby.

44.

On a number of instances after September 2017, Chief of Police Wesley Cannon and members of City Council intentionally referred to Chief Mosby with male pronouns in their communications with her and statements to the media.

45.

For example, Councilman Michael Chumbley always greeted Chief Mosby by saying, "hey man," even after Chief Mosby had politely corrected him on a number of occasions after September 2017.

46.

In an October 2018 meeting of department heads, Police Captain Bill Lavender referred to Chief Mosby as male a number of times during the meeting, and when Chief Mosby corrected the Captain, he sarcastically responded "whatever, dude."

47.

Although City Administrator Derick Hayes heard Captain Lavender's remarks, he refused to take any corrective or disciplinary action or to accept Chief Mosby's formal complaint against Captain Lavender.

48.

Administrator Hayes was Defendant's designated equal employment officer at all relevant times alleged herein.

49.

On several occasions, Administrator Hayes refused to accept or address Chief Mosby's complaints of other employees engaged in sexual harassment and homophobic or transphobic conduct.

50.

There were other instances when Councilmembers, such as Councilman Rusty Adams, blatantly refused to speak to Chief Mosby.

51.

On one occasion, Councilman Adams ignored Chief Mosby, leaving the City's designated table at a local Chamber of Commerce dinner as soon as she sat down.

52.

The treatment of Chief Mosby began to change drastically and dramatically around April 29, 2019, when local media outlet 13WMAZ ran a story, on both its evening news broadcast and online about Chief Mosby coming out as transgender.  (Doc. 1-1.)

53.

When the news outlet approached Chief Mosby about participating in the interview there was nothing in City policy or practice that prevented Chief Mosby from making public statements about this or other topics, as she had on prior occasions.

54.

For almost all of Chief Mosby's tenure, she was not required to wear a uniform.  Instead, the City Budget generally included a line item for a clothing allowance for such attire.

55.

Chief Mosby was permitted to wear professional attire such as khaki pants, button-up shirts, and suits and ties. In 2018, the City budgeted $1,200 for Chief Mosby to use to purchase said professional attire.

56.

In Spring 2018, Chief Mosby sought to purchase professional attire that is considered more-traditionally female.  She spent approximately $600 on clothing, which had been approved in advance by the appropriate authority.

57.

However, when Chief Mosby stopped by the Municipal Complex and was seen wearing a skirt for the first time, the City issued her a written reprimand for allegedly making an unauthorized purchase.

58.

Defendant had no uniform policy governing Chief Mosby's dress at the time of the citation. Defendant also required that Chief Mosby pay back the money.

59.

Subsequently, Defendant's City Council passed a "uniform policy" on May 14, 2019.

60.

Around the same time that Chief Mosby had used her clothing allowance, another female employee of Defendant, who does not identify as transgender, was permitted to make similar clothing purchases, was not disciplined for such purchases , and was not required to pay any money back for the purchases.

61.

Moreover, after this "uniform policy" was enacted, other public safety supervisors, such as the Command Staff of the Police Department and its detectives, were exempted from the policy and permitted to wear non-uniform, professional attire.

62.

The "uniform policy" and subsequent exception such that it seemingly only applied to Chief Mosby evidences a problem that the City Council had with Chief Mosby wearing traditionally-female attire, just as Councilman Chumbley previously suggested that they would.

63.

In Summer 2018, one of Chief Mosby's reserve firefighters called Chief Mosby a "he-she" to her face.

64.

Because of this incident, as well as a prior complaint of sexual harassment made by another employee against the same individual, Chief Mosby decided to terminate the reserve (or "volunteer") firefighter.

65.

Chief Mosby received prior approval from the City Attorney to terminate the employee

66.

Chief Mosby's decision was upheld by Administrator Hayes.

67.

However, Defendant later granted the reserve firefighter's request to appeal in November.

68.

Despite initially upholding the termination, Administrator Hayes, now as the officer hearing the appeal, reversed the termination and reinstated the reserve firefighter.

69.

Administrator Hayes notified Chief Mosby of the appeal via a November 13, 2018 email, in which he initially stated that Defendant would follow the appeal procedures in an unapproved personnel policy that had been proposed, but not yet approved, by City Council.

70.

This was the first time that Chief Mosby had ever seen the proposed revisions that removed *only* a department heads' right to appeal any disciplinary actions taken against them or any employees under their supervision.

71.

The *old* policy did not allow for reserve firefighters to appeal a termination.

72.

Yet, Administrator Hayes told Chief Mosby that she could not appeal the reinstatement because of this *new* policy that was not yet approved or legally in effect.

73.

The new policy was enacted through an ordinance passed and made effective on January 14, 2019. (Doc. 1-2.)

74.

In early 2019, Chief Mosby had the opportunity to review her personnel file, and she found that it did not contain anything about her complaint against the reserve firefighter and found that Defendant failed to revise her file to reflect her legal name change, as she had previously been assured that it would.

75.

On June 4, 2019, the City Administrator sent Chief Mosby an email asking to meet with her that afternoon. When Chief Mosby arrived, the Administrator Hayes provided her with written notice of her termination, effective immediately. (Doc. 1-3.)

76.

This was the first indication that the City ever gave Chief Mosby that she was going to be terminated or that her job was in jeopardy in any way.

77.

Chief Mosby was immediately escorted to her office by the Chief of Police at where she found that the locks had already been changed, and she was forced to pack all of her belongings and leave the premises that same afternoon.

78.

While Defendant stated that the termination was for lack of performance, the examples that it cites are inaccurate and false.

79.

Moreover, Defendant's stated reasons are not valid reasons for termination.

80.

Specifically, Chief Mosby's conduct did not result in the failure of Defendant to "release new/renewal business licenses" in a timely manner.

81.

Alternatively, if Chief Mosby had been the cause for any delay in approval in business licenses, it would have been due to the time that she was forced to take off of work and attend physical therapy because of the injuries that she suffered from her on-the-job injuries.

82.

Defendant failed to take any action to address the delay in issuing business licenses with Chief Mosby, including issuing any warning or disciplinary action.

83.

The allegation that Chief Mosby only attended five of the classes offered during a Georgia Association of Fire Chiefs conference in March and April 2019, is not correct and is based on inaccurate information at best.

84.

Moreover, the amount of time that elapsed between this conference and Chief Mosby's termination indicates that this was not the true cause of her termination.

85.

The third and final reason that Defendant provided for Chief Mosby's termination was that she failed to maintain an Arson Investigator Certification.

86.

Arson Investigations and the certification were things that Defendant expressly removed from the job duties of this position and a certification that Chief Mosby never had.

87.

Chief Mosby's lack of an Arson Investigations Certification is not Defendant's real reason for terminating her employment.

88.

Instead, Defendant terminated Chief Mosby's employment due to Defendant's discriminatory animus based on her sex, gender identity, and notions of sex stereotyping.

89.

Some of the information used to terminate Chief Mosby was communicated from Josh Riley, who was Chief Mosby's second in command, to Administrator Hayes and members of Council.

90.

Josh Riley had a personal interest in Chief Mosby's removal as he stood to be promoted, to fill the vacant position, and he has been serving in the position of Interim Chief since Chief Mosby's termination.

91.

The misinformation related to the conference in Savannah was apparently based on Chief Mosby's private Facebook page that someone who was necessarily "friends" with her on the platform obtained.

92.

After the termination, Administrator Hayes sent Chief Mosby's termination letter to the Peach County Fire Chief and asked him to tell everyone.

93.

This letter was subsequently sent to hundreds of people, including many elected officials and many public safety employees in Peach County and surrounding municipalities and counties.

94.

Due to the January 2019 change in the personnel policy, Chief Mosby was not provided with an opportunity to request any reconsideration, appeal, or review of her termination.

95.

Accordingly, Chief Mosby is the first, and still only, department head who has been discharged by Defendant over the last several years.

96.

Chief Mosby is also the first and only City employee who has been terminated without the right to request an appeal.

97.

Prior to filing a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter, "EEOC"), Chief Mosby provided written notice to Defendant of her claims pursuant to Title VII and the ADA on June 19, 2019, and requested an immediate and unconditional offer of reinstatement.

98.

Defendant failed to provide any written response to this correspondence whatsoever and refused to allow her to appeal the termination.

99.

Since her termination, Chief Mosby's reputation has been tarnished.

100.

Chief Mosby also remains unable to obtain a similar or equivalent position in this field.

101.

As a result of the termination, Chief Mosby lost her salary and all fringe benefits of her employment.

102.

Chief Mosby intended to remain in this position until her retirement, which was expected to be approximately four years from her termination.

103.

As a result of the termination, Chief Mosby will not be fully-vested in her retirement benefits.

Procedural/Administrative Background

104.

On June 28, 2019, Chief Mosby filed her Charge of Discrimination (Charge No. 410-2019-06614) with the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that Defendant subjected her to discrimination by way of harassment, a hostile work environment, and disparate treatment, which ultimately led to her termination, in violation of Title VII and the ADA. (Doc. 1-4.)

105.

To Plaintiff's knowledge, by October 22, 2019, the EEOC failed to take any substantive action as it related to her Charge, having not even confirmed its receipt of her Charge.

106.

While it is clear from correspondence that Defendant received notice and a copy of Chief Mosby's Charge, it is unclear whether the EEOC requested that Defendant submit a position statement.

107.

Upon her request, the EEOC subsequently informed Plaintiff of the individual assigned to investigate her Charge, but it remains unclear whether any action was even taken by that investigator.

108.

On December 19, 2019, when nearly 180 days had elapsed since she filed her Charge, Chief Mosby requested a "Right to Sue Letter."

109.

The Department of Justice subsequently issued a Notice of Right to Sue Within 90 Days dated February 12, 2020, which Chief Mosby received, through counsel on February 18, 2020. (Doc. 1-5.)

110.

Accordingly, Chief Mosby has exhausted her administrative remedies for her Charge of Discrimination alleging discrimination and harassment in violation of Title VII and the ADA, and she is filing the instant litigation with 90 days of receiving her right to sue from the EEOC.

**COUNT I:**
**HARASSMENT AND HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

111.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

112.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discriminate against or harass any of its employees because of sex.  *See* 42 U.S.C. § 2000e-2(a).

113.

"Sex discrimination including discrimination against a transgender person for gender nonconformity." *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. App'x 883, 884 (11th Cir. 2016) (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011)).

114.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

115.

Plaintiff is a member of a protected class in that she is a transgender female.

116.

As alleged herein, Defendant's employees, particularly several of Plaintiff's direct supervisors subjected Plaintiff to conduct that was subjectively offensive and unwelcomed.

117.

Plaintiff personally found such conduct and words extremely offensive.

118.

The conduct in question was directly connected to Plaintiff's sex, gender identity, and notions of stereotyping based on sex.

119.

As alleged herein, the conduct was severe and pervasive enough to create a hostile work environment that a reasonable person would consider intimidating, hostile, and abusive.

120.

Not only did Plaintiff's supervisors fail to address, correct, or provide Plaintiff with the opportunity to engage in any preventative or corrective measures, Plaintiff's direct supervisors were the source of much of the offensive conduct.

121.

Defendant is liable for the conduct of its non-supervisory employees as Defendant knew about the harassment of Plaintiff by its non-supervisory employees and as Defendant failed to take prompt and appropriate corrective measures.

122.

Defendant is unable to articulate any legitimate, nondiscriminatory reason for the offensive conduct.

123.

Plaintiff has been injured by Defendant's harassment and hostile work environment, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT II:**
**WRONGFUL TERMINATION**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT**

124.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

125.

Under Title VII of the Civil Rights Act, it is unlawful for an employer to discharge any employee on the basis of sex.  *See* 42 U.S.C. § 2000e-2(a).

126.

"Sex discrimination including discrimination against a transgender person for gender nonconformity." *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. App'x 883, 884 (11th Cir. 2016) (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316-17 (11th Cir. 2011)).

127.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under Title VII, respectively.  *See* 42 U.S.C. §§ 2000e & 2000e-1.

128.

Plaintiff is a member of a protected class in that she is a transgender female.

129.

Plaintiff's job performance during her nearly eleven-year tenure as Defendant's Fire Chief was satisfactory to exemplary.

130.

Defendant terminated Plaintiff because of her sex, gender identity, and notions of sex stereotyping.

131.

Defendant's stated reasons for terminating Plaintiff are inaccurate and pretextual to hide Defendant's discriminatory animus.

132.

Plaintiff has been injured by Defendant's wrongful termination of her, and Plaintiff is entitled to all damages allowed under Title VII of the Civil Rights Act, including an award of back pay, reinstatement and/or front pay, compensatory and punitive damages, if available, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

## COUNT III:
## WRONGFUL TERMINATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

133.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

134.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

135.

Discrimination based on disability includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

136.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under the Americans with Disabilities Act, respectively.  *See* 42 U.S.C. § 12111.

137.

Plaintiff has a disability and was perceived by Defendant as having a disability that substantially limits a number of major life activities.  Specifically, her disability includes conditions in her right ankle and lower back lumbar and conditions in her left hip, left wrist, and mid-back thoracic caused by an on-the-job injury.

138.

Defendant was aware of these conditions, and therefore, Plaintiff was perceived by Defendant as having a disability.

139.

As alleged herein, Plaintiff had been satisfactorily performing the duties of the role of Fire Chief, and she was otherwise qualified to perform the essential functions of this job, with or without a reasonable accommodation.

140.

Defendant terminated Plaintiff due to these disabilities.

141.

Defendant replaced Plaintiff with an individual without a disability.

142.

Plaintiff has been injured by Defendant's discrimination due to her disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including an award of back pay, reinstatement and/or front pay, compensatory and punitive damages, if available, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT IV:**
**FAILURE TO PROVIDE REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

143.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

144.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

145.

Discrimination based on disability includes an employer's failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

146.

As alleged herein, Defendant and Plaintiff are a covered, non-exempt employer and employee under the Americans with Disabilities Act, respectively.  *See* 42 U.S.C. § 12111.

147.

Plaintiff has a disability and was perceived by Defendant as having a disability that substantially limits a number of major life activities.  Specifically, her disabilities include conditions in her right ankle and lower back lumbar and conditions in her left hip, left wrist, and mid-back thoracic caused by an on-the-job injury.

148.

Defendant was aware of these conditions, and therefore, Plaintiff was perceived by Defendant as having a disability.

149.

As alleged herein, Plaintiff had been satisfactorily performing the duties of the role of Fire Chief, and she was otherwise qualified to perform the essential functions of this job, with or without a reasonable accommodation.

150.

Defendant's stated reasons for terminating Plaintiff included certain reasons that were caused or delayed due to Plaintiff's disabilities and/or time in which she was seeking treatment for said conditions; specifically, time in which she was out of the office for doctor's appointments, physical therapy, and breaks that Plaintiff was required to take to avoid sitting or standing for long periods of time.

151.

Accordingly, Defendant failed to provide Plaintiff with a reasonable accommodation for her conditions and injuries that are considered disabilities under the Americans with Disabilities Act.

152.

Plaintiff has been injured by Defendant's failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including an award of back pay, reinstatement and/or front pay, compensatory and punitive damages, if available, and attorney's fees and costs of litigation, all in an amount to be proven at trial.

**COUNT V:**
**DEPRIVATION OF DUE PROCESS**
**IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS**

153.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

154.

Pursuant to the Fifth and Fourteenth Amendments of the Constitution of the United States, Plaintiff has the right to due process of law.

155.

Due process of law is denied when an arm of the state acts directly against an individual's property and deprives her of it without notice or an opportunity to be heard.

156.

As a transgender female, Plaintiff is a member of several suspect classifications, and the Court should apply a heightened standard of review to Defendant's actions.

157.

Plaintiff had a property interest in her continued employment as well as the compensation resulting therefrom including all fringe benefits of said employment.

158.

As alleged herein, in January 2019, Defendant changed its long-standing personnel policy to remove the right for heads of departments to appeal adverse employment actions taken against them.

159.

Plaintiff was terminated without any prior notice, and she was not provided with any opportunity to be heard, appeal, or otherwise challenge this action.

160.

Defendant's actions were without any justification and were entirely arbitrary and capricious.

161.

Defendant has deprived Plaintiff of her property interest in continued employment without due process of law, as defined by the Constitution of the United States, and Plaintiff is entitled to all damages available to her in an amount to be proven at trial.

## COUNT VI:
## DEPRIVATION OF DUE PROCESS
## IN VIOLATION OF THE GEORGIA CONSTITUTION

162.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

163.

"The due process clause of the Georgia Constitution, while mirroring the language of the due process clause of the fourteenth amendment, afford greater protection than does federal due process." *Fields v. Rockdale Cnty.*, 785 F.2d 1558, 1561 (11th Cir. 1986).

164.

Due process of law is denied when an arm of the state acts directly against an individual's property and deprives her of it without notice or an opportunity to be heard.

165.

Defendant changed its policies to remove the right of a department head to appeal an adverse employment action.

166.

Defendant's removal of this right was done to target Plaintiff.

167.

As a transgender female, Plaintiff is a member of several suspect classifications, and the Court should apply a heightened standard of review to Defendant's actions.

168.

Plaintiff had a property interest in her continued employment as well as the compensation resulting therefrom including all fringe benefits of said employment.

169.

As alleged herein, in January 2019, Defendant changed its long-standing personnel policy to remove the right for heads of departments to appeal adverse employment actions taken against them.

170.

Plaintiff was terminated without any prior notice, and she was not provided with any opportunity to be heard, appeal, or otherwise challenge this action.

171.

Defendant's actions were without any justification and were entirely arbitrary and capricious.

172.

Defendant has deprived Plaintiff of her property interest in continued employment without due process of law, as defined by the Constitution of the State of Georgia, and Plaintiff is entitled to all damages available to her in an amount to be proven at trial.

## COUNT VII:
## DEFAMATION IN VIOLATION OF O.C.G.A. §§ 51-5-1 & 51-5-4

173.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 110, as if the same were set forth herein.

174.

Defendant and its representatives, agents, and employees made and published false verbal statements to the media and other third parties that consisted of false charges against Plaintiff in reference to her trade, office, and profession.

175.

Defendant and its representatives, agents, and employees made false written statements to the media and other third parties, which consisted of false charges against Plaintiff in reference to her trade, office, or profession.

176.

These false statements were calculated to injure Plaintiff and her reputation.

177.

These statements concerning Plaintiff's trade, office, or profession imputed to Plaintiff a want of integrity and misfeasance in her office.

178.

As a result of Defendant's acts, Plaintiff and her reputation have been injured, which has also caused her damages including but not limited to a complete inability to secure similar employment in her field.

179.

Defendant is liable for its defamation of Plaintiff, including both libel and slander, and Plaintiff has been damaged by this conduct in an amount to be proven at trial.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Rachel Mosby respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant City of Byron, Georgia and said Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for harassment and hostile work environment, granting Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;

4)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for wrongful termination, granting Plaintiff all relief allowable under Title VII of the Civil Rights Act of 1964;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for wrongful termination, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

6)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for Defendant's failure to provide Plaintiff with a reasonable accommodation, granting Plaintiff all relief allowable under the Americans with Disabilities Act;

7)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for Defendant's deprivation of due process in violation of the Fifth and Fourteenth Amendments to the United State Constitution and grant Plaintiff all relief allowable;

8)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VI for Defendant's deprivation of due process in violation of the Constitution of the State of Georgia and grant Plaintiff all relief allowable;

9)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VII for Defendant's defamation of Plaintiff and grant Plaintiff all relief allowable;

10)     For such other relief as this Court shall deem just and proper.

Respectfully submitted, this 28th day of April, 2020.


                                                        _____
                                                        KENNETH E. BARTON III
                                                        Georgia Bar No. 301171
                                                        M. DEVLIN COOPER
                                                        Georgia Bar No. 142447
                                                        *Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com