## IN THE UNTIED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| RACHEL MOSBY, | |
|     Plaintiff, | Civil Action No.: |
| v. | 5:20-cv-00163-TES |
| CITY OF BYRON, GEORGIA, | |
|     Defendant. | |

### BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

COMES NOW Plaintiff Rachel Mosby (hereinafter, "Mosby"), by and through the undersigned counsel, and files her Brief in Opposition to Defendant's Motion to Dismiss (Doc. 5), requesting that the Court deny Defendant's Motion to Dismiss in its entirety, as follows:

### I.   BACKGROUND

On June 28, 2019, Chief Mosby submitted her Charge of Discrimination (hereinafter, "Charge") to the Equal Employment Opportunity Commission (hereinafter, "EEOC"). (Doc. 1-4.) In pertinent part, she alleged that Defendant discriminated against her in violation of Title VII of the Civil Rights Act (hereinafter, "Title VII") and the Americans with Disabilities Act (hereinafter, "ADA"). (*Id.* at 5.) Chief Mosby's counsel drafted the Charge, and it included a five-page letter, notice signed by Chief Mosby of her legal representation, and eleven pages of exhibits. (Doc. 1-4.) Chief Mosby requested that the EEOC provide her with its entire investigative file, which the EEOC did on May 11, 2020. (Doc. 10-1.) The EEOC's copy of the Charge does not contain the attachments or the designation of counsel. (*See* Doc. 10-1 at 17-21.)

While Chief Mosby had confirmation that the Charge had been successfully sent by both facsimile and Certified Mail, she still had received any response after four months. On October

22, 2019, she sent correspondence to the Director of the Atlanta District Office inquiring into the status. (Doc. 10-2.), Director Darrell Graham quickly responded by email, indicating that someone would make contact soon. (Doc. 10-3.) By October 31, 2019, when no one from the EEOC had made contact, Chief Mosby sent a message following up with the Director. (Doc. 10-4 at 1-2.) Later that day, an EEOC representative called and left a message for counsel seeking clarification of the date that the Charge was filed. Less than ten minutes later, the undersigned sent a copy of the Charge that had been made available the same day through the online Public Portal and contained a file stamp showing the EEOC's receipt on June 28, 2019. (*See* Docs. 10-5 at 2-3 & 10-1 at 17.)

On November 6, 2019, the undersigned contacted another an investigator who was then listed as the EEOC's point of contact on this matter, along with the individual who called the prior week. (Doc. 10-5 at 2.) Having received no response by November 19, 2019, counsel sent an email to follow up with the Senior Investigator, to which she responded the next day informing Chief Mosby that the case was reassigned to another Investigator. (*Id.* at 1.)

Chief Mosby made numerous offers to assist the EEOC with the investigation and provide more information; however, Chief Mosby never received any substantive updates. In light of the EEOC's complete failure to communicate and since the 180-day period was set to elapse six days later, Chief Mosby sent a request on December 19, 2019, for a "Right to Sue Letter" and a copy of the EEOC's file. (Doc. 10-6.) Four days later, she received a letter from the EEOC acknowledging her request and further stating that the request was forwarded to the Department of Justice (hereinafter, "DOJ"). (Doc. 10-7 at 2-3.) On January 3, 2020, after the 180 days had elapsed, Chief Mosby wrote to the Director, asking if the EEOC was authorized at that point to issue the Right to Sue letter. (*Id.* at 1.) The EEOC responded that it was not. (Doc. 10-8 at 1.)

When the Right to Sue letter had not been received by February 11, 2020, counsel wrote the EEOC once again to follow up. (Doc. 10-8 at 3.)  The EEOC had also failed to produce the investigative file by that time, and Chief Mosby repeated that request.

On February 18, 2020, Chief Mosby received a Right to Sue letter from the DOJ (Doc.1-5),  and this action was filed soon thereafter.  On May 1, 2020, Chief Mosby sent her third "Section 83" request to the EEOC for a copy of the investigative file. (Doc. 10-8.)  A copy of the file was finally provided to Chief Mosby on May 11, 2020.  (Doc. 10-1.)  For unknown reasons, much of the aforementioned correspondence is not contained in the file produced by the EEOC.  (*See id.* at 1-26.)

Upon her review of the file, Chief Mosby saw that, at some time after August 1, 2019, the EEOC had requested that Defendant submit a position statement.  (*Id.* at 280-283.)  Despite asking the EEOC about this several times, this was the first time that Chief Mosby became aware that Defendant submitted its Position Statement. (*Id.* at 27-278.)  The Position Statement, which is dated September 27, 2019, consists of an eleven-page written statement drafted by counsel who now represents Defendant in this litigation.  (*Id.* at 27-37.)  It also includes 241 pages of exhibits. (*Id.* at 38-279.) Importantly, Defendant failed to raise the lack of a verification for the Charge in its Position Statement, and there is no reference to a verification or oath requirement contained within the entire EEOC file.  The parties and the EEOC all treated the Charge as valid.

In Defendant's Motion to Dismiss and Memorandum of Law in Support thereof (Docs. 5 & 5-1), it argues that claims brought under Title VII and the ADA (Counts I-IV) should be dismissed because Chief Mosby failed to verify her EEOC Charge. (Doc. 5-1 at 5-10.)  Defendant also requests that this Court dismiss Chief Mosby's claims of deprivation of due process pursuant to both the Constitutions of the United States (Count V) and the State of Georgia (Count VI).  (*Id.*

a 10-15.)  Defendant contends that the defamation claim is infirm because statements were made about Chief Mosby as a public official and she had not shown actual malice.  (*Id.* at 15-16.)

## II.  ARGUMENT AND CITATION OF AUTHORITY

Chief Mosby's claims under the ADA and Title VII were adequately exhausted before the EEOC, and Defendant waived any arguments about the sufficiency of her Charge.  Chief Mosby also met her burden of pleading a violation of her due process and defamation claims.  As a result, the Court should deny Defendant's Motion to Dismiss in its entirety.[1]

### A.  Defendant Waived Its Right to Raise the Lack of Verification When it Responded Substantively to the Charge Without Raising this Issue.

While "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires," rules of equity allow for this verification requirement to be waived in certain circumstances. *See* 42 U.S.C. § 2000e-5(b). Where "an employer has actual notice of a discrimination charge and chooses to respond on the merits of the claim before the EEOC without asserting lack of verification as a defense[,] it waives its right to secure dismissal of the federal court proceedings on that basis." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 265 (3d Cir. 2006). Here, Defendant waived its right to assert a failure to verify defense at this stage in the litigation, and its request to dismiss should be denied.

EEOC regulations require that a "charge shall be in writing and signed and shall be

---

[1] A court may dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1216 (3d ed. 2002); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). In considering Defendant's Rule 12(b)(6) motion, this Court must construe the Complaint in Plaintiff's favor and accept the allegations of facts therein as true. *See Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). A plaintiff need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In denying Defendant's Motion to Dismiss, this Court should find that there is "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

verified." 29 C.F.R. § 1601.9. "Verified" means that the charge needs to be "sworn to or affirmed before a notary public" or other authorized person or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a). A "charge may be amended to cure technical defects or omissions, including failure to verify the charge." 29 C.F.R. § 1601.12(b).[2]

However, the verification requirement is not a jurisdictional issue, and a failure to verify a charge would not divest this Court of subject matter jurisdiction. While it appears that the Eleventh Circuit has not recently considered this question, such a finding would be consistent with a recent Supreme Court decision.  In *Fort Bend v. Davis*, the Supreme Court held that a defense of failure to exhaust administrative remedies, and thus a challenge to a claim-processing rule, is not jurisdictional in nature.  139 S.Ct. 1843, 1848-50 (2019).  Therefore, unlike a challenge to subject matter jurisdiction that may be raised at any time, such an "objection based on a mandatory claim-processing rule may be forfeited 'if the party asserting the rule waits too long to raise the point.'" *Id.* 139 S.Ct. at 1849 (citations omitted). This defense does not challenge the Court's jurisdiction, meaning the defense must be brought early in the litigation or is waived.

1.  A defendant waives this argument when it has actual notice of the Charge and responds to the merits but fails to raise the verification issue before the EEOC.

Courts are split on whether a failure to verify is fatal to an action or could be subject to equitable waiver. When ruling on a motion to dismiss raising the failure to verify, circuits have either dismissed the claim, waived the defense, or stayed the proceedings. The Court should find that Defendant waived its right to assert this defense because Defendant had knowledge of the Charge, knew of any deficiencies, and failed to raise the issue before the EEOC.

The Third Circuit has held that, when "an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack

---

[2] The same procedural requirements that apply to Title VII cases also apply to ADA cases. *See* 42 U.S.C. § 12117(a).

of verification as a defense[,] it *waives* its right" to dismissal of the claim. *Buck*, 452 F.3d at 265 (emphasis added).[3] In that case, the plaintiff filed "a detailed, eight-page charge of discrimination, signed by her attorney" with the EEOC, which then sent the defendant notice, along with a copy of charge. *Id.* at 259. After receiving notice, the defendant filed an "Answer and Position Statement," and the plaintiff later filed a rebuttal. *Id.* Ultimately, the EEOC chose to close the case and issue a right to sue letter. *Id.* Only after the EEOC dismissal and the plaintiff filed a civil action did the defendant raise any failure to verify in a motion to dismiss. *Id.* The court reasoned that equitable considerations required a waiver under those circumstances because "the verification requirement is concerned only with protect[ing] an employer from *responding* to an unverified charge." *Id.* at 263. Once "an employer files a response on the merits, he foregoes the protection that the requirement affords." *Id.* The Court suggested that "considerations of practical justice" should lead to that result. *Id.* (quoting *U.S. v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36 (1952)).

Courts in the First and Fifth Circuits appear to prefer staying the proceedings to allow the plaintiff time to file a late verification with the EEOC. *See McWilliams v. Latah Sanitation, Inc.*, 149 F. App'x 588, 590 (9th Cir. 2005); *Maillet v. TD Bank U.S. Holding Co.*, 981 F. Supp. 2d 97 (D. Mass. 2013). It is true that a "charge may be amended to cure technical defects or omissions, including failure to verify the charge." 29 C.F.R. § 1601.12(b). However, the right to amend is limited to when there is a case still pending in front of the EEOC. *See Butler v. Greif, Inc.*, 325 F. App'x 748, 749 (11th Cir. 2009) ("Where a right to sue letter has issued, the plaintiff has brought

---

[3] *Accord Perkins v. Fed. Fruit & Produce Co.*, 861 F. Supp. 2d 1285, 1290 (D. Colo. 2012) (holding that where the "EEOC and [the defendant] participate[] in the investigation of the plaintiffs' EEOC charges" and "[n]o objection to the lack of verification [is] raised during the EEOC investigation[,]" the defendant and EEOC forfeit[] their right "to enforce the verification requirement.)

suit, and the EEOC has closed its file, there is no longer a charge pending before the EEOC that is capable of being verified") (citing *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir.1994)).

While the only courts that appear to have explicitly found that a defendant waived this argument have been those in the Third and Tenth Circuits,[4] the Fifth, Sixth, and Ninth Circuits have all at least alluded to the possibility of waiver in some circumstances. *See Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 79 (5th Cir. 1982) (finding that verification requirement is "subject to equitable considerations" and thus a "triable issue of fact with respect to a possible EEOC waiver" exists.);[5] *Davenport v. Asbury, Inc.*, No. 3:12-CV-445, 2013 WL 1320696 at *13 (E.D. Tenn. Mar. 29, 2013) (in finding that the defendant did not waive because it objected before the EEOC suggests that waiver could still be possible); *Ramirez v. Bolster & Jeffries Health Care Grp.*, LLC, 277 F. Supp. 3d 889, 903 n.7. (W.D. Ky. 2017) (finding that a defendant who was not provided opportunity to respond to a charge did not waive its verification argument); *West v. Alaska Airlines, Inc.*, No. 3:18-CV-00102-SLG, 2018 WL 6424705 at *5 (D. Alaska Dec. 6, 2018) (holding a defendant who was not provided with either the charge or opportunity to respond did not waive the argument). Thus, these courts appear to find waiver possible, although they found it to be inappropriate when a defendant either did not receive actual notice or a chance to respond to a charge or when the defendant did raise the issue to the EEOC.

Only courts in two Circuits have dismissed a claim outright for failure to verify, without considering the possibility of a waiver. *See Balazs v. Liebenthal,* 32 F.3d 151 (4th Cir. 1994)

---

[4] *See Buck,* 452 F.3d at 265; *E.E.O.C. v. JBS USA, LLC*, 794 F. Supp. 2d 1188, 1202 (D. Colo. 2011); *Perkins v. Fed. Fruit & Produce Co.*, 861 F. Supp. 2d 1285, 1290 (D. Colo. 2012); *see also Gad v. Kansas State Univ.*, No. CV 12-2375-EFM, 2016 WL 74399 at *8 (D. Kan. Jan. 6, 2016) (holding that the EEOC unilaterally waived the verification requirement based on its procedural failures that would lead a reasonable person to believe that an unverified charge was accepted) (on remand from *Gad v. Kansas State Univ.*, 787 F.3d 1032 (10th Cir. 2015)).

[5] This case was decided shortly after the split between the Fifth and Eleventh Circuits in September 1981 and is therefore not binding authority. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981).

(holding that verification is a mandatory requirement, which cannot be done after EEOC dismissal); *accord Bacon v. Allstate Ins. Co*., No. 93 C 1701, 1995 WL 360736 at *7 (N.D. Ill. June 14, 1995). However, both of these cases were decided well before *Buck*, and neither of these cases involved a situation where the defendant responded to the merits of the charge during the EEOC proceeding. Moreover, lack of a verification was not the only problem in *Balazs*, as the plaintiff did not allege a valid retaliation claim and filed after his deadline. 32 F.3d at 160.

While the Eleventh Circuit has not directly ruled on whether the verification requirement can be waived, it has suggested that waiver may be appropriate in limited circumstances similar to *Buck*. *See Butler*, 325 F. App'x at 748; *Dees v. Fla.*, No. 4:10CV305/MCR/WCS, 2012 WL 662295 (N.D. Fla. 2012). In *Butler*, counsel filed an unverified charge with the EEOC. *Butler v. Greif, Inc.*, No. 1:07-CV-1978-ODE, 2008 WL 11424203 at *2 (N.D. Ga. 2008), aff'd, 325 F. App'x at 748. Three months later, the EEOC dismissed the case and issued the right to sue letter, citing the plaintiff's failure to respond to its requests to return a signed charge and make himself available for an interview. *Id*. When suit was filed, the defendant moved for summary judgment, arguing secondarily that the plaintiff failed to submit a verified charge to the EEOC. *Id*.  Two weeks after the motion was filed, which was about ten months after the charge was dismissed, the plaintiff submitted a second charge to the EEOC, along with the verification of counsel. *Id*. The plaintiff argued that the attorney's signature was sufficient for the verification requirement and, even if the verification requirement had not been met the first time, it was cured with the second submission to the EEOC. *Butler*, 325 F. App'x at 749.

The appellate Court opined that an attorney may sign a charge on behalf of a client, but verification requirement can only be met if the attorney had personal knowledge.  *Id*. Citing to *Buck*, the Eleventh Circuit seemingly recognized that waiver may be appropriate when the

employer responded to the merits, but did not challenge the sufficiency of the charge before the EEOC, and then later moved to dismiss for lack of a verification. *Id.* (citing *Buck*, 452 F.3d 256). However, the Court of Appeals found that the plaintiff was not entitled to equitable relief because of the plaintiff's failure to cooperate with the EEOC. *Id.* (citing *Forehand v. Fla. State Hosp.*, 89 F.3d 1562, 1570 (11th Cir. 1996)). Nonetheless, the Eleventh Circuit recognized that a defendant's actions before the EEOC may lead to its waiver of the argument in litigation; it merely found that *Butler* was not an appropriate case to find a waiver.

The Northern District of Florida followed a similar approach. *Dees*, 2012 WL 662295 at *4. The Court acknowledged that cases where waiver is appropriate are rare, although the Court found that the defendant never did anything that could be construed as a waiver. *Id.* Critically, the plaintiff never submitted a charge at all, instead only submitting an intake questionnaire, failed to respond to the EEOC's inquiry about one of her claims, checked a box acknowledging that the questionnaire was not a charge, and failed to return a charge that the EEOC prepared for her despite the EEOC's warning about the consequences for failing to do so. *Id.* at *2.  It was due to the plaintiff's own failures before the EEOC that waiver or "equitable modification" was not appropriate.  *Id.* at *4.  For the reasons discussed below, this Court should find that Defendant waived this argument and Chief Mosby is entitled to equitable relief.

2. <u>Defendant waived the verification requirement when it failed to raise the objection before the EEOC and Plaintiff took substantial measures to cooperate.</u>

While waiver and equitable relief are only to be applied in limited circumstances, this is certainly such an instance. Similar to *Buck*, Defendant completely failed to raise the failure to verify with the EEOC and instead responded substantively to the allegations.  *See Buck*, 452 F.3d at 265. Defendant waited until the Right to Sue letter had been issued to raise the issue before this Court. *Id.* By then, Chief Mosby's was unable to file a verification with the EEOC.

There is one crucial difference in this case.  In *Buck*, it was the EEOC that chose not to pursue the action any further.  *Id.* 452 F.3d at 259.  Here, Chief Mosby *requested* the Right to Sue letter as a direct result of the EEOC's inexplicable failures to communicate any information over a period of many months or even respond to Chief Mosby's inquires. This circumstance is the kind of reason that equitable modification exists.

Chief Mosby, through counsel, submitted a lengthy and thorough letter entitled "Charge of Discrimination" to the EEOC. This letter included all information required under the EEOC's regulations,[6] as well as a designation of counsel signed by Chief Mosby, but it did not include a verification.  As is alluded to in the case law, when the EEOC receives a letter from counsel or an intake questionnaire, it generally prepares its "Form 5" Charge, which includes a verification, and asks that that the charging party sign and return it within thirty days.  Consistent with other issues that Chief Mosby experienced with the EEOC during the same period, the EEOC no longer returns the Form 5 to at least some charging parties, including Chief Mosby. Regardless, the EEOC treated the letter as a Charge, assigned a Charge Number, and sent notice to Defendant.

While Chief Mosby was able to confirm the EEOC's receipt both by fax and Certified Mail, the EEOC failed to provide any indication that the Charge had been received and filed.  After months of no communication from the EEOC, Chief Mosby contacted the Division Director, who apologized for the way this was handled.  After another week of silence, Chief Mosby again contacted the Director. Despite the Charge, the stamp from the fax machine, and the EEOC's "received" stamp all having matching dates, someone from the EEOC still inquired as to the date

---

[6] The Charge letter included 1) Chief Mosby's full name, address and telephone number; 2) the full name address of Defendant, the person the Charge was against; 3) a clear and concise statement of facts along with dates; 4) the approximate number of employees; and, 5) since this matter had not been presented to a State or local agency, such a statement was not required.  29 C.F.R. § 1601.12(a).  While this regulation does not reference the requirement of an oath or verification, it is stated in 29 C.F.R. § 1601.9, and this was the only thing missing from the Charge.

of filing. It ultimately took over four months for the EEOC to provide Chief Mosby with confirmation that her Charge had been even been received, and then only after her inquiries.

Whether the EEOC is required "to inform a plaintiff of deficiencies in her charge,"[7] the aforementioned case law places a duty on defendants to raise said deficiencies with the EEOC. Once the defendant responds on the merits to a charge, the EEOC and the defendant have treated it as a charge, leading a reasonable person to believe that the investigative proceedings can continue. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1320-22 (11th Cir. 2001) (determining if an intake questionnaire functions as a charge, "we must ask the following question: Would the circumstances of this case convince a reasonable person that [the plaintiff] manifested her intent to activate the machinery of Title VII by lodging her intake questionnaire with the EEOC?").[8]

Not only did the EEOC treat this as a Charge, so too did Defendant by submitting a lengthy response to the factual allegations. Unbeknownst to Chief Mosby, even after she spent months requesting updates and access to the Public Portal, Defendant apparently submitted its Position Statement to the EEOC on September 27, 2019. The Statement consisted of an eleven-page letter with fifteen attached exhibits, all in response to the facts. Nowhere in the 256 pages of Defendant's response did it raise lack of verification or oath.

Instead of raising the issue before the EEOC, Defendant waited until the moment when there is nothing that Chief Mosby can do.  Shortly after Defendant raised this issue for the first

---

[7] *Fry v. Muscogee Cnty. Sch. Dist.*, 150 F. App'x 980, 982 (11th Cir. 2005).

[8] *Cf. Dees*, 2012 WL 662295 at *4 (holding that "the plaintiff [did] not allege[] any acts by [the defendant] that reasonably could be construed as a waiver" because the plaintiff's filing of the intake questionnaire only indicated that the plaintiff wanted to speak with an EEOC representative not that the plaintiff wanted to file a charge of discrimination); s*ee also Gad*, 787 F.3d at 1042-43 ("[N]oncompliance [with the verification requirement] [may] be excused . . . where negligent EEOC conduct would mislead a reasonable layperson into thinking he need not verify."); *Gad*, 2016 WL 74399 at *8 (EEOC's "fail[ure] to adequately and accurately follow its own procedures [by] investigat[ing] Plaintiff's allegations without receiving a signed charge of discrimination . . . [could result in] a reasonable layperson [believing] that a verified charge of discrimination was an unnecessary prerequisite to proceed in federal court.").

time, Chief Mosby attempted to amend her Charge to correct the alleged deficiency. (Doc. 10-9.) She argued that the EEOC should accept the amendment because DOJ, not the EEOC, issued the Right to Sue and the EEOC's file does not contain its standard Form 291 or anything else that would suggest that the case was closed. (*Id.*) On July 24, 2020, an EEOC Enforcement Supervisor contacted the undersigned to say that the filing would not be accepted because the case was closed.

The underlying purposes of the charge requirements have been met in this case. Those purposes are to 1) to notify the employer of a discrimination charge and 2) to initiate the EEOC's investigation of the complaint. *Pijnenburg v. W. Ga. Health Sys., Inc.*, 255 F.3d 1304, 1306 (11th Cir. 2001). Here, Defendant clearly had notice of the Charge as it submitted a response. While the EEOC may not have reached an ultimate decision on the allegations, it began the investigation by seeking Defendant's Statement, and the EEOC had plenty of opportunity to investigate the claims.

The specific purpose of the verification requirement is to "protect[] employers from the *disruption and expense of responding* to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002) (emphasis added). As one court explained, "[o]nce the case reaches federal court, verification serves little, if any, further purpose because the entire EEOC review process subsumes any initial gate-keeping function it plays." *Sanchez v. City and Cnty. of Denver*, No. 1:19-cv-01307, 2019 WL 5695949 (D. Col. 2019) (citing *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355, 357 (6th Cir. 1969); *EEOC v. U.S. Fid. & Guar. Co.*, 420 F.Supp. 244, 249 (D. Md. 1976)).

This Plaintiff is clearly serious enough about her allegations that she filed and is vigorously pursuing them before this Court. Moreover, Defendant accepted the disruption and expense of responding when it could have forgone answering the substance by simply notifying the EEOC that the Charge was unverified.

Defendant opted to wait until Chief Mosby's hands were tied to surprise her with the procedural defect. It would be inequitable to allow this Defendant who had a fair opportunity to raise this issue nearly a year ago, but declined, to now assert this defense. *See Buck*, 452 F.3d at 264. To allow such would incentivize employers *not* to raise a plaintiff's failure to verify their charge at the EEOC, in the hope that the plaintiff does not discover the technical error until it is too late to remedy. *Id*. This Defendant is very similar to that in *Buck* as it had actual notice and chose to respond, failing to raise the verification issue with the EEOC. *See id*. at 265. Similarly, this Court should find that Defendant "waive[d] its right to secure dismissal" at this stage of litigation based on the verification defense. *Id*.

This is one of those rare cases in which waiver and equitable modification are appropriate. Unlike in *Butler*, Chief Mosby made substantial efforts to cooperate with the EEOC. (*See* Doc. 1, ¶¶ 104-110.) After submitting her Charge, she initiated contact with the EEOC on at least eight occasions.[9]  As a result of the procedural failures of the EEOC, Defendant asserting only a substantive defense before the EEOC, and the substantial measures that Chief Mosby took in an attempt to cooperate and pursue her claims before the EEOC, it would be inequitable for the Court not to allow her Title VII and ADA claims to proceed.

## B.  Defendant Ignored its Own Procedures in Terminating Plaintiff, and its Personnel Policies Otherwise Created a Vested Property Interest in Continued Employment.

Defendant argues that Chief Mosby's due process claims should be dismissed because she did not have a property interest in her continued employment. (Doc. 5-1 at 10-15.) This argument fails primarily because Defendant failed to follow its own procedures when it terminated Chief Mosby.  Moreover, Chief Mosby was entitled to procedural due process as Defendant's personnel

---

[9] October 22, 2019, October 31, 2019, November 6, 2019, November 19, 2019, December 19, 2019, December 29, 2019, January 3, 2020, and February 18, 2019. (*See supra* at 1-3.)

policies established a vested property interest in her continued employment. Additionally, since both arguments require an intensive factual analysis, it would be inappropriate to dismiss these claims at this stage in the proceeding.

    1.   <u>Defendant failed to properly terminate Plaintiff.</u>

Since Chief Mosby's termination, the parties have largely focused on whether she was entitled to an appeal. However, based on a review of Defendant's Charter and Code of Ordinances (including its personnel policies therein), the individual who fired Chief Mosby did not have that authority.  Defendant previously pointed to Section 8.1(H) of its personnel policies in support of the City Administrator's authority to fire.  Yet, that policy merely deals with the right of a department head, such as the Fire Chief, to appeal a termination, not whether the City Administrator is actually authorized to terminate department heads.

Under, Article III, Section 3.10(e) of the Charter, there may be some circumstances when the Administrator may remove or suspend appointed officers, such as the Fire Chief. That authority is limited though when "otherwise provided by law or ordinance."  Section 2.30 of the Charter provides the Administrator with some authority to suspend or remove officers, but this provision only with respect to those individuals whom "he or she appoints." That power is further narrowed when otherwise provided by law or the personnel ordinances.

At its April 2008 meeting, the Mayor and Council appointed Chief Mosby as Defendant's first Fire Chief.  That was consistent with the Code of Ordinances, which provide that the authority to appoint a Fire Chief rests with the Mayor and Council.  Chapter 2, Article III, Section 2-61(a).  Moreover, this provision explicitly states that a fire chief's tenure and performance are governed by the personnel policies.  Personnel policy 8.1(K) provides that appointed officers are subject to removal "by the appointing authority" and in the case of a Chief Mosby, the Mayor and Council could terminate her.

Defendant will likely argue that the City Administrator's authority to terminate Chief Mosby arises in policy 8.1(D).  However, that provision does not allow the City Administrator to discharge anyone; it merely provides a list of alternatives to disciplinary action that a department head and the City Administrator should consider when disciplining an employee under their supervision.  Consistent with this reading of  policy 8.1(D), policy 3.1 provides categories of employment, and it states that "[d]epartment heads may only be appointed, disciplined, or removed by a majority of City Council."

Defendant may argue that recent amendments to its Charter and Code of Ordinances were intended to provide greater power to the City Administrator to fire employees.  However, these provisions still limit the authority if it is otherwise provided by law or ordinance.   The principals of statutory construction apply to city ordinances.  *Stidwell v. City of Atlanta*, No. 1:16-CV-3375-MHC, 2018 WL 4999971 (N.D. Ga 2018) (quoting *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1996)).  As a result, all of the policies must be considered *in pari materia*.  *Id.* (citing *Willis v. City of Atlanta*, 285 Ga. 755, 776 (2009); *J. Kinson Cook, Inc. v. Weaver*, 252 Ga. App. 868, 870 (2001)).   Defendant's Charter and Code of Ordinances are not in conflict because the Administrator's authority to terminate is limited when such policies provide otherwise, therefore removing any conflict.  However, even if a conflict were to be found, the only provision making explicit reference to a Fire Chief is that giving authority to appoint to the Mayor and Council.  Because the City Administrator may only suspend or remove officers whom he appoints, that would suggest that he was not authorized to fire Chief Mosby. Defendant failed to terminate Chief Mosby in accordance with its own policies, violating her due process rights in the process.

2. <u>Despite referring to its employees as "at-will," the personnel policies only permit termination for cause.</u>

Defendant's argument that there was no vested property interest relies on the erroneous assumption that the personnel policies simply treated Chief Mosby as an at-will employee who was not allowed to appeal personnel actions.  However, this argument must fail because, regardless of *which* personnel policies applied to her position, the policies applied to her and offered her some level of protection.   Chief Mosby met her burden of pleading by alleging that Defendant's termination of her employment deprived her of the requisite due process.

Defendant argues that the key consideration for whether a public employee has a vested right to employment – and therefore a property interest – is whether the employee may only be dismissed for cause." Despite Defendant's classification of the position as "at-will," her termination was only permissible with cause. Defendant ignores two important points.  First, unlike here, "[t]he new policies superseded the previous policies and *removed all of the provisions* regarding grounds for disciplinary action, notice, and grievance procedures." *DeClue v. City of Clayton*, 246 Ga. App. 487, 488 (2000) (emphasis added).  In this instance, the *only* relevant change made to the ordinance was removal of department heads' right to appeal.  (Doc. 1, ¶¶ 72-73, 94-96; Doc. 1-2 at 1.) The consideration of whether a termination would only be appropriate "for cause" is a fact-intensive analysis that the *DeClue* court considered on summary judgment, not on a Motion to Dismiss.  *See id.*, 246 Ga. App. at 489.

Critically, Defendant's department heads are still considered employees.  According to Section 3.10(d) of Defendant's Charter, a director or principal officer of a department is subject to the direction and supervision of the City Administrator. The next paragraph provides that "appointive officers and directors shall be *employees* at-will and subject to removal or suspension at any time by the city administrator unless otherwise provided by law or ordinance." (emphasis added).  Even if the City Administrator has the authority to appoint a department head, he may not

do so on a whim.  As provided in Section 2-61(a) of Defendant's Code of Ordinances, "[t]he fire chiefs [sic] tenure and performance shall be in accordance with the personnel policies of [Defendant]." Not only should one assume that some of the personnel policies apply to department heads as employees, the Ordinances explicitly subject the Fire Chief to said policies.

These policies provide varying protections to employees, including department heads. In Section 8(B), individuals are placed into one of two groups, either as "employees" or "supervisors." Indeed, the Charter establishes the City Administrator as the supervisor of department heads. It would logically follow that the policies would treat the City Administrator as the supervisor and the department head as the employee when disciplinary action is contemplated. Moreover, the policies specifically distinguish department heads from other employees when the policies intend to treat these individuals differently. For example, as provided in Section D, "[e]mployees shall be subject to the following alternatives for disciplinary action as determined by their department head; or, in the case of department heads, as determined by the City Administrator…"  At times, the term "employee" is intended to include department heads.

Even if a department head were entitled to *less* protection than other employees, they are still entitled to some rights.  For example, with the City Administrator as the supervisor, they should assist the Fire Chief in attaining competence through training and warnings should come before discipline.  (Doc. 1-2 at 1, § 8(A).)  The City Administrator should discuss inadequate performance and help the Fire Chief to correct deficiencies before discipline is required.  (*Id.* at 1-2, § 8(B).) "Discipline should correspond to the offense." (*Id.* at 2, § 8(D)(2).) Disciplinary actions against the Fire Chief should be taken quickly and normally not more than five days after the incident, unless there are multiple violations over a period of time.  (*Id.*, § 8(C).)  Discipline "should be increasingly progressive in nature" and these steps should include reprimand,

suspension, demotion, and then dismissal. (*Id.* at 1-3, §§ 8(A)-(B) & (D).)  Assuming he has the authority, the City Administrator should use these steps of progressive discipline *before* discharging the Fire Chief.  (*Id.* at 3, § 8(D).) Since the issue of whether an employee has a vested right and property interest is not dependent upon the words "for cause" appearing in the personnel policies, this Court is not required accept Defendant's classification of Chief Mosby's position at face value. (*See DeClue*, 246 Ga. App. at 489).

The policies contain a specific list of grounds for disciplinary action that applied to all employees, including the fire chief.  (*See* Doc. 1-2 at 2, § 8(D).)  Therefore, even if her position were called "at-will," Defendant still may have only dismissed Chief Mosby "for cause."  *See Brownlee v. Williams*, 233 Ga. 548, 553 (1975).  "Whatever this 'cause' might be it is a limitation on the power of [Defendant]. Some 'cause' must be shown." *Id.* Chief Mosby met her burden of pleading by alleging that Defendant deprived her of a vested property interest in continued employment without providing any due process.  The Court should also refrain from engaging in this fact intensive analysis at this stage in the proceedings and deny Defendant's request.

### C.  Plaintiff Sufficiently Alleged that Defendant's Defamatory Statements Were the Result of its Actual Malice Toward Her.

Chief Mosby has also met the standard of pleading at this stage for her defamation claim. Defendant argues that Chief Mosby should be considered a "public official" as it relates to this claim.  In so doing, Defendant argues that the claim fails because she did not allege actual malice. The Court should find that this argument lacks any merit.

Courts have held that a public official claiming defamation must ultimately prove actual malice.  The Supreme Court has explained that the First and Fourteenth Amendments recognize a privilege in which individuals are protected from liability for what are best described as honest

mistakes of fact concerning public officials. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964). Instead, the Court reasoned:

> The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with "actual malice" – that is, *with knowledge that it was false or with reckless disregard of whether it was false or not.*

*Id.* (emphasis added). Accordingly, central to the consideration of one individual's defamatory comments about a public official is that person's intent in making the statement.

Defendant's argument fails because Chief Mosby has met her burden at the pleading stage of this proceeding.   Chief Mosby is not required to prove her case at this time. She is simply required to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  The Complaint clearly alleges that Defendant acted with actual malice in its statements giving rise to this claim.

Georgia law defines "libel" as "a false and malicious defamation of another [in writing] tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1.  Similarly, slander can include oral statements, such as those regarding another's "trade, office, or profession, that is calculated to injure." O.C.G.A. § 51-5-4. Other than in privileged communications, like those about a public officer, malice is generally inferred.  O.C.G.A. § 51-5-5.

Chief Mosby alleged that Defendant, and individuals acting on its behalf, made false written and oral statements to the media and other third parties about her and involving her profession.  (Doc. 1, ¶¶ 174-75.)  As alleged, Defendant made these false statements with the specific intention to cause damage to Chief Mosby and her reputation. (*Id.*, ¶¶ 176.) Notwithstanding the specific examples of false statements, she also alleged that Defendant

subjected her to disparate treatment, or intentional discrimination, based on her sex and disability.[10]   When a person intentionally discriminates against another, that person is, by definition, acting in bad faith, and, generally they are intentionally treating the person less favorably. In addition to the specific examples of Defendant's malice, the Court can also find that the discriminatory animus alleged by Chief Mosby throughout the Complaint is sufficient for the Court to find that Chief Mosby's claim of defamation is rooted in actual malice.

### III.   CONCLUSION

Accordingly, for the above and foregoing reasons, Plaintiff Rachel Mosby respectfully requests that the Court find that she met her burden of pleading at this stage of the litigation, deny Defendant's Motion to Dismiss (Doc. 5) in its entirety, and allow this matter to proceed to discovery.

Respectfully submitted, this 3rd day of August, 2020.

KENNETH E. BARTON III
Georgia Bar No. 301171
M. DEVLIN COOPER
Georgia Bar No. 142447
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com

---

[10] For example, Chief Mosby alleged that she was subjected to microaggressions and intentional harassment from subordinates, fellow department heads and City Council member. (Doc. 1, ¶ 37.) Council members express prejudice toward her.  (*Id.*, ¶ 38.) Chief Mosby's job was openly threatened. (*Id.*, ¶ 39.) Defendant misgendered her both in public statements and directly to her, in addition to other disparaging remarks. (*Id.*, ¶¶ 44-46, 63.) When Chief Mosby complained about harassment, she was ignored.  (*Id.*, ¶¶ 47-49, 63-72.)  She was ignored and ostracized by Council members. (*Id.*, ¶¶ 50-51.)  Defendant inequitably applied its policies to Chief Mosby and even made other policies intended to target harm her. (*Id.*, ¶¶ 53—62, 65-73, 94-96.)  Not only did Defendant terminate Chief Mosby, it immediately escorted her from her office and then further injured her by sharing news of the termination with members of the public. (*Id.*, ¶¶ 75-77, 92-93.)

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served the foregoing BRIEF IN OPPOSITION TO

DEFENDANT'S MOTION TO DISMISS to the Clerk of Court using the CM/ECF system, which

will automatically send electronic mail notification of such filing to the following counsel of

record, who are CM/ECF participants:

Adam L. Appel, Esq.
Matthew A. Ericksen, Sr., Esq.
Dermer Appel Ruder, LLC
6075 The Corners Parkway, Suite 210
Peachtree Corners, Georgia 30092
aappel@darlawllc.com
mericksen@darlawllc.com
*Attorneys for Defendants*

This 3rd day of August, 2020.

KENNETH E. BARTON III
Georgia Bar No. 301171
M. DEVLIN COOPER
Georgia Bar No. 142447
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
mdc@cooperbarton.com

159180001.P10.Response to MTD