**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | |
|---|---|
| **RACHEL MOSBY,** | |
| *Plaintiff,* | **CIVIL ACTION NO.** |
| **v.** | **5:20-cv-00163-TES** |
| **CITY OF BYRON, GEORGIA,** | |
| *Defendant.* | |

**ORDER OF DISMISSAL**

This case asserts, among others, claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, 2000e-1, 2000e-2(a), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111, 12112(a), 12112(b)(5)(A).

Because many of the substantive facts aren't important to the particular issues before the Court, a lengthy factual narrative is unnecessary. However, what is important, is that Plaintiff Rachel Mosby served as the City of Byron's Fire Chief for 11 years until she was terminated. Now, she makes the following claims against the City: Counts I and II include her sex-based discrimination claims for harassment, hostile work environment, and wrongful termination under Title VII; Counts III and IV are claims for wrongful termination and failure to provide a reasonable accommodation under the ADA; Counts V and VI each contain a deprivation of due process claim—one

alleging a violation of the Fifth and Fourteenth Amendments to the United States

Constitution and the other alleging a violation of the Georgia Constitution; and Count

VII is a defamation claim under Georgia law pursuant to O.C.G.A. §§ 51-5-1 and 51-5-4.

In response to Mosby's Complaint, the City filed a motion to dismiss asserting,

*inter alia*, that her Title VII and ADA claims are time-barred because "neither [she] nor

her [attorney] filed a *verified* charge with the [Commission]." [Doc. 5-1, p. 5]. After an

initial review of the parties' briefs, it became clear to the Court that resolution of the

verification issue would likely "require the Court to consider matters outside" Mosby's

pleading. *See generally* [Doc. 12]. So, with respect to the verification requirement, the

Court converted the City's motion to dismiss into one for summary judgment and

permitted a short period within which the parties could procure supporting evidence

and file supplemental briefs. With both parties having filed one additional brief in

support of their positions, the City's motion is now ripe for consideration.

### A.   The City of Byron's Motion for Summary Judgment

#### 1.   Legal Standard

A court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on

the evidence presented, "'a reasonable jury could return a verdict for the nonmoving

party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002)

(quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991));

*see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Importantly, the movant

"has the burden of demonstrating that there are no genuine issues of material fact, [and]

once that burden is met[,] the burden shifts to the nonmoving party to bring the court's

attention to evidence demonstrating a genuine issue for trial." *Perry v. Pediatrix Med.*

*Grp. of Ga.*, 2021 WL 194145, --- F. App'x ----, at *3 (11th Cir. 2021) (quoting *Alvarez v.*

*Royal Alt. Dev., Inc.*, 610 F.3d 1253, 1263 (11th Cir. 2010)).

In executing its burden, the movant may cite to particular parts of materials in

the record, including, "'the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,' which it believes demonstrate

the absence of a genuine issue of material fact." *Four Parcels*, 941 F.2d at 1437 (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1)(A). "When the

nonmoving party has the burden of proof at trial, the moving party is not required to

'support its motion with affidavits or other similar material negating the opponent's

claim[]' in order to discharge this 'initial [burden].'" *Four Parcels*, 941 F.2d at 1437–38

(quoting *Celotex*, 477 U.S. at 323). Rather, "the moving party simply may show—that is,

point out to the district court—that there is an absence of evidence to support the

nonmoving party's case." *Id.* (quoting *Celotex*, 477 U.S. at 324) (cleaned up).

Alternatively, the movant may provide "affirmative evidence demonstrating that the

nonmoving party will be unable to prove its case at trial." *Id.*

If this initial burden is satisfied, the burden then shifts to *the nonmoving party*, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324) (emphasis added). The nonmoving party does not satisfy her burden "if the rebuttal evidence 'is merely colorable or[] is not significantly probative' of a disputed fact." *Josendis*, 662 F.3d at 1315 (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

### 2.    Mosby's Charge of Discrimination

Before filing a lawsuit that concerns violations of Title VII or the ADA, Congress explicitly and unmistakably mandated that a plaintiff submit a Charge of Discrimination to the Equal Employment Opportunity Commission which "shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). In addition to Congress' charge-filing requirement, the Commission's regulations mandate that "[a] charge . . . *shall be verified*." 29 C.F.R. § 1601.9 (emphasis added). That is, a charge must be "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." *Id.* at §

1601.3(a). Defendant's summary judgment motion case calls upon the Court to answer one main question: just how mandatory is the Commission's verification requirement?

On June 28, 2019, Mosby submitted her charge which consisted of a detailed, five-page letter drafted and signed by her attorney laying out her grievances, a notice signed by Mosby identifying that an attorney was submitting the charge on her behalf, and 11 pages of exhibits.[1] *See generally* [Doc. 1-4]. What she didn't file was any sort of verification to her charge. Thus, despite submission of her charge, the City argues that Mosby's (and/or her attorney's) failure to verify it bars her Title VII and ADA claims as a matter of law. [Doc. 5-1, pp. 3, 5]; 42 U.S.C. § 2000e-5(e)(1).

The City makes a simple argument: "[T]here is no evidence that . . . Mosby or her [attorney] ever submitted a *verified* charge to the [Commission] and [without a verified charge], [Mosby's] Title VII and ADA claims must be dismissed." [Doc. 5-1, p. 6]. While the United States Supreme Court allows a later-verified charge to "relate back" to an original charge, the window of opportunity to do so shuts when the Commission closes its file. *See generally Edelman v. Lynchburg Coll.*, 535 U.S. 106 (2002); *see also Butler v. Grief, Inc.*, 325 F. App'x 748 (11th Cir. 2008). "Where a right to sue letter has issued, the plaintiff has brought suit, and the [Commission] has closed its file, there is no longer a

---

[1] "While an attorney may file a[] . . . charge on behalf of a client, the attorney's signature alone will not constitute verification if the attorney does not personally swear to the truth of the facts stated in the charge and does not have personal knowledge of those facts." *Butler v. Grief*, 325 F. App'x 748, 749 (11th Cir. 2009).

charge pending before the [Commission] that is capable of being verified." *Butler*, 325 F. App'x at 749. In other words, a charging party can amend her charge and—in that amendment—include a verification "only so long as the [original] charge is a viable one in the [Commission's] files[.]" *Id.* (citing *Balazs v. Liebenthal*, 32 F.3d 151, 156–58 (4th Cir. 1994)).

After realizing that neither he nor his client ever verified the charge, Mosby's attorney tried to amend the charge to add the requisite verification. In a letter to the Commission dated July 17, 2020 (well after she filed suit on April 28, 2020), Mosby's attorney wrote: "Based upon our review of the [Commission's] investigative file that we received on May 11, 2020, the [Commission] has not issued a Dismissal and Notice of Rights or taken any other action to close this matter." [Doc. 10-9, p. 1]; *see also* [Doc. 1, p. 31]. To that letter, Mosby attached an amendment to her original charge to include a verification. [Doc. 10-9, p. 2]. Thus, the Court must first decide whether Mosby could have amended her original charge in the first place. The short answer is that she could not.

On December 19, 2019, following an exchange of several emails between Mosby's attorney and various representatives from the Atlanta District Office of the Commission regarding the status of Mosby's charge, Mosby's attorney requested the Commission "to issue a Notice of Right to Sue and close this file." *See generally* [Doc. 10-6]; *see also* [Doc. 10-2]; [Doc. 10-3]; [Doc. 10-4]; [Doc. 10-5]. That same day, the Commission

6

informed Mosby, that her request for a Notice of Right to Sue had "been forwarded to the U.S. Department of Justice (DOJ) for action[]" and that the Department of Justice ("DOJ") would "act on [her] request and issue the Notice directly to [her.]" [Doc. 10-7, p. 2].

On January 3, 2020, even though Mosby's attorney "underst[ood] that the request" for a Notice of Right to Sue "had to be forwarded to the DOJ[,]" he still (ostensibly because of the time that had passed since Mosby filed her original charge) asked whether the Commission was "able to issue a Right to Sue Letter[.]" [Doc. 10-8, p. 1]; *see also Fort Bend Cnty. v. Davis*, 139 S.Ct. 1843, 1847 (2019) ("Whether . . . the [Commission] acts on the charge, a complainant is entitled to a 'right-to-sue' notice 180 days after the charge is filed."). In response, the Commission stated that it was not and that "[t]he DOJ is solely responsible for issuing Notices upon request by the parties against state and local government entities." [Doc. 10-8, p. 1].

Then, on February 12, 2020, the DOJ "notified" Mosby that she had "the right to institute a civil action . . . against [the City]." [Doc. 1-5, p. 1]. Mosby filed her lawsuit on April 28, 2020, and 18 days after the City (in its original dismissal motion) pointed out that she failed to file a verified charge, she attached (to her attorney's July 17, 2020 letter to the Commission) the amendment to her charge that included a verification. *See* [Doc. 5, p. 1] *in connection with* [Doc. 10-9, p. 2]; *see also* [Doc. 1, p. 31].

Mosby's attempt, however, to amend her original charge on July 17, 2020, fails because the DOJ issued its "right-to-sue" letter on February 12, 2020, nearly six months earlier. Candidly, the City is correct; Mosby's "charge was inexplicably not verified," and following the precedent set by the Eleventh Circuit, it is clear that there wasn't an active charge within the DOJ that could be amended. *Butler*, 325 F. App'x at 749; [Doc. 11, p. 2].

In briefing, Mosby even admits that "[o]n July 24, 2020, a[] [Commission] Enforcement Supervisor contacted [her attorney] to say that the [amendment to her charge] could not be accepted because the [file] was closed." [Doc. 10, p. 12]; *see also* [Doc. 14, p. 9]. Through a summary-judgment lens, the evidence shows that Mosby failed to verify her charge. And, based on Mosby's waiver-related arguments that attempt to save her Title VII and ADA claims, she effectively admits she didn't file a verified charge. Thus, based on the fact that "[t]he verification requirement is mandatory[,]" and Mosby failed to adhere to it, her Title VII and ADA claims must be dismissed. *Butler*, 325 F. App'x at 749; *see also Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir. 2001); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 261 (3d Cir. 2006) (noting that "courts have reasoned that amendment serves no purpose once the right to sue letter has issued[]").

However, in an attempt to keep her Title VII and ADA claims alive, Mosby contends that the City waived her failure to verify when it submitted a Position

Statement to the Commission and failed to mention the verification requirement. [Doc. 10, pp. 3–13]. In short, Mosby argues that everyone involved—herself, the City, and the Commission—all treated the charge as valid. [Doc. 10, p. 3].

While the Eleventh Circuit has acknowledged waiver-related arguments, it has yet to definitively hold that equitable waiver applies to missing verifications, much less issue any opinion that stakes out the scope or contours of such a waiver rule or the circumstances[2] when it might apply.[3] *Vason*, 240 F.3d at 907.

Nevertheless, the only binding precedent available to the Court at the time of this decision clearly and distinctly holds that "the verification requirement for . . . charges is mandatory." *Id.*; *accord Balazs*, 32 F.3d at 156 (holding that failure to comply with the verification requirement "is fatal to an action seeking relief under Title VII"). In *Vason*, a three-judge panel on the Eleventh Circuit explicitly held that "the statute mandates that charges be made under oath or affirmation" and affirmed a district court's grant of summary judgment to an employer because the employee's "charge was not under oath or affirmation." 240 F.3d at 907.

---

[2] Even if the Eleventh Circuit ultimately decides that the verification requirement may be waived, it could decide that waiver does not apply in cases, like this one, where (1) both the plaintiff and her experienced attorney simply forgot to include the requisite verification and (2) the defendant responded to the charge of discrimination but could not have definitively known of the lack of verification because it only had the charge itself as opposed to the entire file from the Commission that could have included a separate verification. *See* [Doc. 11, p. 3].

[3] Another district court has also recognized that the Eleventh Circuit has yet to decide when a finding of equitable modification or waiver is appropriate. *Dees v. Florida*, No. 4:10cv305/MCR/WCS, 2012 WL 662295, at *4 (N.D. Fla. Feb. 28, 2012).

Mosby implores the Court to recognize *Buck v. Hampton Township School District* and *Gad v. Kansas State University*[4] where the Third and Tenth circuits, respectively, crafted an opposite waiver rule. *Buck*, 452 F.3d 256; *Gad*, 787 F.3d 1032 (10th Cir. 2015). However, it must be remembered that this Court is bound by this circuit's *current* precedent—the precedent set by the Eleventh Circuit. In other words, *Vason* controls until the en banc Eleventh Circuit or the United States Supreme Court directly overrules it. *See Bostock v. Clayton Cnty. Bd. of Comm'rs*, 723 F. App'x 964, 965 (11th Cir. 2018) (mem.) (citing *United States v. Kaley*, 579 F.3d 1246, 1255–56 (11th Cir. 2009)). It simply is not the place of a district court to decide when a circuit precedent is overruled or abrogated to the point that it is no longer binding on lower courts; that remains the exclusive domain for the circuit court.

Additionally, Mosby also urges the Court to consider a 2019 case from the United States Supreme Court, *Fort Bend County, Texas v. Davis*, 139 S.Ct. 1843 (2019). However, *Fort Bend*'s procedural history is drastically different than the procedural posture presented in this case and, upon careful inspection, its holding may not directly

---

[4] *Gad* specifically discusses *Vason*'s ruling that affirmed summary judgment on the grounds that "verification is mandatory." *Gad*, 787 F.3d 1032, 1041 (10th Cir. 2015) (citing *Vason*, 240 F.3d at 907). In *Gad*, the Tenth Circuit noted that the Eleventh Circuit, in *Vason*, "never explicitly dubbed the [verification] requirement *jurisdictional*." *Gad*, 787 F.3d at 1041. However, the Tenth Circuit clearly stated that the holding from *Vason* "strongly suggests an implicit conclusion that the requirement was jurisdictional." *Id.* Just to clarify, the Court does *not* find that Mosby's failure to verify robs the Court of jurisdiction to hear her case. Quite the opposite. As explained in the latter portion of this section, the Court finds that it absolutely has jurisdiction to decide these motions and only follows Eleventh Circuit precedent holding that a lack of a verification is mandatory so that a failure to comply means that a plaintiff failed to satisfy a condition precedent to filing suit for Title VII and ADA claims.

overrule the precedent set by the Eleventh Circuit in *Vason* concerning the mandatory requirement that a charge be verified. "For the Supreme Court to overrule a case, its decision must have 'actually overruled or conflicted with [the Eleventh Circuit's] prior precedent.'" *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008) (citation omitted). Importantly, the Eleventh Circuit has emphasized that

> [t]here is a difference between the holding in a case and the reasoning that supports that holding. Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision.

*Id.* (citing *Atl. Sounding Co. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007)).

Because the Supreme Court's holding in *Fort Bend* is not "clearly on point," it may not have overruled the Eleventh Circuit's prior precedent in *Vason*. *Cole v. United States*, --- F. App'x ----, 2021 WL 118849, at *2 (11th Cir. Jan. 13, 2021). Whether *Fort Bend* overrules or abrogates *Vason* can only be decided by the Eleventh Circuit, not this Court. Thus, there is only one ruling the Court can properly make in this case.

This record, as it stands today, does not contain a verified charge, and "the statute mandates that charges be made under oath or affirmation." *Vason*, 240 F.3d at 907. Since "verification is an absolute condition precedent to suit" under Title VII (and the ADA) in this circuit, Mosby's lack of verification demands one simple ruling—she did not satisfy an absolute condition precedent before filing her lawsuit. *See Vason v. City of Montgomery*, 86 F. Supp. 2d 1130, 1133 (M.D. Ala. 2000), *aff'd*, 240 F.3d 905

(alteration adopted). Consequently, Mosby's Title VII and ADA claims are barred as a matter of law. Notwithstanding Mosby's reasonable arguments as to why there should possibly be an exception to the *Vason* rule (such as equitable waiver), until the Eleventh Circuit overrules *Vason*, the Court must apply it. And, while the Court certainly empathizes with both Mosby and her attorney regarding the results of their omission, it nonetheless **GRANTS** summary judgment to the City on Counts I–IV of her Complaint.

### B.    The City of Byron's Motion to Dismiss

#### 1.    Legal Standard

When ruling on a motion under Federal Rule of Civil Procedure 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). Under this Rule, a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). Such motion is an "assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted." *Id.*

Whether a complaint states a claim for relief is measured by reference to the pleading standard of Rule 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.*; Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require *detailed* factual allegations, it does require "more than unadorned, the-defendant-

unlawfully-harmed-me accusations." *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citation omitted) (alterations adopted). The purpose of Rule 8 is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief."[5] *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *see also Twombly*, 550 U.S. 555–56.

When drafting her complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). "To be sure, a plaintiff may use legal conclusions to structure [her] complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

---

[5] To decide whether a complaint survives a motion to dismiss, district courts use a two-step framework. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that the plaintiff is entitled to the legal remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555. Finally, and in this case, critically, a complaint that tenders "'naked assertions' devoid of 'further factual enhancement'" will not survive against a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (cleaned up). To survive, a complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### 2. Mosby's Due Process Claims

In Counts V and VI of her Complaint, Mosby alleges that the City violated her due process rights afforded to her under the United States and Georgia constitutions, respectively. [Doc. 1, ¶¶ 153–72]. Public employees, like Mosby, "may have a protectable interest in their jobs such that they may not be terminated from those jobs without the protections of procedural and substantive due process." *Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 913–14 (11th Cir. 1993) (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Mosby describes this protected interest as "a property interest in continued employment." [Doc. 1, ¶ 157].

To establish a procedural due process claim, Mosby must first show that she had a property interest of which she was deprived. *Womack v. Carroll Cnty.*, --- F. App'x ----,

2020 WL 7365795, at *2 (11th Cir. Dec. 15, 2020) (citation omitted). "State law determines whether a public employee has a property interest in his or her job. Under Georgia law, a public employee generally has no protected property interest unless he or she is employed under a civil service system, which allows termination only for cause."[6] *Id.* (quoting *Brett v. Jefferson Cnty.*, 123 F.3d 1429, 1433–34 (11th Cir. 1997)). "Generally speaking," however, "'a public employee has a property interest in continued employment if state law or local ordinance in any way limits the power of the appointing body to dismiss an employee.'" *Gonzalez v. City of Hialeah*, 744 F. App'x 611, 614 (11th Cir. 2018) (quoting *Ross v. Clayton Cnty.*, 173 F.3d 1305, 1307 (11th Cir. 1999)). Still though, without an agreement between the employee and the employer, "Georgia follows an 'at-will' employment doctrine, which permits the employer to discharge the employee for any reason whatsoever . . . ." *H&R Block E. Enters., Inc. v. Morris*, 606 F.3d 1285, 1284 (11th Cir. 2010).

Previously, the Court noted that the specific facts underlying Mosby's Title VII and ADA claims were not important in order to analyze the procedural aspects concerning verification. However, in light of the City's arguments regarding Mosby's due process claims, some factual detail is necessary, and the Court—as it must—pulls these factual allegations from Mosby's Complaint and assumes them to be true when

---

[6] Mosby neither alleged nor argued that she is subject to the protections afforded by a civil service system. *See generally* [Doc. 1]; [Doc. 10]; [Doc. 14].

considering the City's arguments. The City summarizes Mosby's due process claims as this: Mosby "asserts that she had a property interest in continued employment based on the [C]ity's former personnel policy which provided an appeal process for department heads to appeal adverse employment actions."[7] [Doc. 5-1, p. 2].

In the summer of 2018, Mosby alleges that one of her reserve firefighters subjected her to discriminatory harassment on the basis of her sex. [Doc. 1, ¶ 63]. After receiving prior approval from the City's attorney, Mosby terminated that reserve firefighter, and her decision was initially upheld by Derick Hayes, the City Administrator. [*Id.* at ¶¶ 47, 65–66]. However, on November 13, 2018, Hayes emailed Mosby and informed her of an appeal sought by the reserve firefighter. [*Id.* at ¶ 69]. In that email, Hayes told Mosby that the City "would follow the appeal procedures in" a "personnel policy that had been proposed, but not yet approved, by City Council." [*Id.*]. Hayes heard the appeal, reversed Mosby's decision to terminate and reinstated the reserve firefighter. [*Id.* at ¶ 68]. This email was the first time Mosby "had ever seen the proposed revisions that removed *only* a department head's right to appeal any disciplinary actions taken against them or any employees under their supervision." [*Id.* at ¶¶ 69–70]. The proposed revisions discussed in Hayes' email to Mosby were "enacted through an ordinance passed and made effective on January 14, 2019." [*Id.* at ¶ 73].

---

[7] In other words, the City, through a revised personnel policy, removed Mosby's right to appeal an adverse employment action taken against her as a department head—the Fire Chief.

The City casts Mosby's due process claims as an issue related to a lack of notice of the proposed changes. [Doc. 5-1, pp. 14–15]. Relying on Mosby's allegations in her Complaint, the City argues that "Mosby had been notified of the proposed policy change" and that she "was clearly in communication with . . . Hayes regarding [the proposed changes] and had numerous opportunities to voice her displeasure prior to the new policy being enacted." [*Id.* at p. 14]. On this, the City is correct. Mosby had two months to review the proposed changes before they became effective. *See* [Doc. 1, ¶ 69] *in connection with* [Doc. 1, ¶ 73]. Thus, to the extent Mosby argues that the City didn't give her an opportunity to dispute the proposed changes, her argument fails. *See DeClue v. City of Clayton*, 540 S.E.2d 675, 677–80 (Ga. Ct. App. 2000).

However, an issue relating to a lack of notice of the proposed changes isn't, according to Mosby's arguments, the crux of her due process claims. Instead, Mosby alleges that the City "arbitrar[ily]" terminated her "without any prior notice" and as such "failed to follow its own procedures." [Doc. 1, ¶¶ 159–60]; [Doc. 10, p. 13]. Although Mosby argues that the City deprived her of her due process rights when it immediately terminated her instead of adhering to the "increasingly progressive

nature" of discipline, she only receives *constitutional* protections if she has a protected property interest.[8] [Doc. 1-2, p. 2].

"To obtain a protected property interest in employment, a person must have more than a mere unilateral expectation of continued employment; one must have a legitimate claim of entitlement to continued employment." *Warren v. Crawford*, 927 F.2d 559, 562 (11th Cir. 1991). And importantly, "[u]nder Georgia law, in the absence of a controlling contract between the parties, employment for an indefinite period is terminable at will by either party." *Id.* (citing *Land v. Delta Airlines*, 203 S.E.2d 316, 317 (Ga. Ct. App. 1973)); *see also Stidwell v. City of Atlanta*, No. 1:16-CV-3375-MHC, 2018 WL 4999971, at *3 (N.D. Ga. Feb. 8, 2018) (citing *DeClue*, 540 S.E.2d at 677).

Since the City's Personnel Polices clearly say that Mosby is an at-will employee and they are silent as to any for-cause requirement, the City is correct that Mosby did not have a property interest in her employment when the City terminated her, and the Court **GRANTS** the City's dismissal motion as to Mosby's due process claims.[9] *DeClue*, 540 S.E.2d at 678 (when an employee no longer has any property interest in her

---

[8] As to the "progressive nature" of the City's disciplinary scheme, the Personnel Policies state that "an employee" can be "immediately terminate[d] . . . for any one of the reasons listed in this policy." [Doc. 1-2, p. 2]. Because "[d]iscipline should correspond to the offense," the policy clearly allows the City to terminate an employee without the use of progressive discipline. [*Id.*].

[9] Even if Mosby could show a deprivation of some right protected by the due process clause, there is nothing in her Complaint alleging that she took advantage of available state procedures, like mandamus, to correct any potential due process deficiency. "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived [her] of procedural due process." *Nurse v. City of Alpharetta*, 775 F. App'x 603, 607 (11th Cir. 2019) (quoting *Cotton v. Jackson*, 216 F.3d 1328, 1331 (11th Cir. 2000) (per curiam)).

employment after new policies become effective, the employer does not violate due process rights by terminating employment without notice and a hearing); *see, e.g.*, [Doc. 1-2, p. 6].

### 3.   Mosby's Defamation Claim

Finally, the City contends that Mosby has failed to state a defamation claim under Georgia law because she has not alleged actual malice in light of her public figure status as the Fire Chief. [Doc. 5-1, p. 16].

When the plaintiff is a public figure, like Mosby, she must ultimately prove "actual malice" in order to prevail on a claim for defamation. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). Under Georgia law, "libel" is "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51-5-1(a). Essential to recovery on any libel claim is publication. *Id.* at § 51-5-1(b). Slander, on the other hand, is oral defamation and consists of "[m]aking charges against another in reference to [her] trade, office, or profession, calculated to injure." *Id.* at § 51-5-4(a)(3).

In her Complaint, Mosby alleges that the City made and published false written and verbal "statements to the media and other third parties that consisted of false charges against [Mosby] in reference to her trade, office, and profession." [Doc. 1, ¶¶ 174–75]. To further lay out her claim, Mosby merely recites the elements of a cause of

action for defamation by stating that "[t]hese false statements were calculated to injure" her. [*Id.* at ¶ 176]; *see also McCullough*, 907 F.3d at 1333, *supra*.

Pleading issues aside, a public official, like Mosby, cannot recover for defamation unless she can prove that "the statement was made with 'actual malice'—that is with knowledge that it was false or with reckless disregard of whether it was false or not." [Doc. 10, p. 19 (quoting *Sullivan*, 376 U.S. at 279–80)]. Importantly, she never points out which statements were false. *See, e.g.*, [Doc. 1, ¶¶ 173–79]. Instead, Mosby points to microaggressions and intentional harassment from subordinates, fellow department heads, and members of the City Council—the same things she uses to support her sex-based discrimination claims. [Doc. 10, p. 20 n.10 (citing [Doc. 1, ¶¶ 37–38, 44–46, 63)].

At this juncture, the Court will not comb through Mosby's 179-paragraph Complaint and cherry-pick which statements or "microaggressions" she intends to use to support some notion of harassment or her defamation claim. Detailing the grounds for her entitlement to relief is her responsibility. *Barreth*, 2020 WL 4370137, at *2. Although Mosby is correct that "the person's intent in making the statement" is "central to the consideration of . . . defamatory comments," so is falsity. [Doc. 10, p. 19]; *see also Sullivan*, 376 U.S. at 279–80. Although Mosby does not have to prove her case via her Complaint, Eleventh Circuit pleading standards require that she allege more than she did. Recitation pleading of the kind Mosby has used to structure her defamation claim

is not permitted. Accordingly, the Court **GRANTS** the City's dismissal motion as to Mosby's defamation claim.[10]

### C.     <u>Conclusion</u>

In summation, the Court **GRANTS** the City's Motion for Summary Judgment [Doc. 5] as it relates to the verification requirement for filing a charge of discrimination and **GRANTS** the City's Motion to Dismiss [Doc. 5] with respect to Mosby's due process and defamation claims. The Clerk is **DIRECTED** to **ENTER** Judgment in favor of the City of Byron on all counts.

**SO ORDERED**, this 28th day of January, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[10] The City (and thus, Mosby) never argued whether sovereign immunity protects the City from liability with respect to Mosby's defamation claim. *See Doss v. City of Savannah*, 660 S.E.2d 457, 426 (Ga. Ct. App. 2008) (citing *City of Atlanta v. Heard*, 555 S.E.2d 849, 852 (Ga Ct. App. 2001)) ("The City [of Savannah] is entitled to the protections of sovereign immunity on the claim of defamation, as [the plaintiff] has failed to establish any waiver of this immunity."). The Georgia Constitution permits the Georgia General Assembly to waive the sovereign immunity of municipalities. *Heard*, 555 S.E.2d at 852 (citing GA. CONST. of 1983, art. IX, § II, para. IX). However, "it is clear that such waiver must be by express legislative act." *Heard*, 555 S.E.2d at 852. "In speaking to this authority, the legislature has declared, with limited exception, that 'it is the public policy of the State of Georgia that there is no waiver of the sovereign immunity of municipal corporations of the state and such municipal corporations shall be immune from liability for damages.'" *Id.; see also* O.C.G.A. § 50-21-24(7) ("The state shall have no liability for losses resulting from . . . libel [or] slander[.]").